UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  15-mj-02396

UNITED STATES OF AMERICA )
)
v. )
)
JOSE MORALES, )
)
Defendant. )
)
)
_____/

**ORDER DENYING DEFENDANT MORALES' MOTION
TO REVISIT  PRETRIAL DETENTION**

Defendant Jose Luis Morales filed a motion to revisit pretrial detention. [ECF No.

7].  The motion is based on a change in the circumstances surrounding his planned

residence were he to be released on bond. Although **those** circumstances have changed,

the Undersigned cannot grant the motion because *other* circumstances have also

changed (or become more concrete) -- and those circumstances undermine his motion.

Specifically, and as outlined below, it now seems certain that Mr. Morales is

facing a 15-year minimum mandatory sentence under the Armed Career Criminal Act

("ACCA"), not the 77 to 96-month sentence his counsel argued at both the initial

detention hearing and the hearing on the motion to revisit. This is a significant

difference in potential exposure.  Thus, the Undersigned has revisited and reconsidered the pretrial detention order, but will not rescind or modify it.

**Factual Background**

Defendant Morales had his initial pretrial detention hearing before the Undersigned on April 1, 2015. At the time, Morales was charged by criminal complaint with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

During this hearing, the parties disputed whether Morales was facing a 15-year minimum mandatory sentence, with a maximum of life imprisonment.

The Government argued then that Morales has three prior serious drug offenses, which makes him an armed career criminal under 18 U.S.C. § 924(e). (Tr., p. 8).[1] Defense counsel argued that one of the convictions, from 2004, should not be counted because it is time-barred (i.e., "it would be more than ten years and he didn't receive a sentence of a year and a month"). Defense counsel also argued that "if someone is arrested on the same day for multiple offenses and the case is resolved the same day, for guideline purposes in calculating the criminal history it counts as one offense." (Tr., p. 9). The AUSA took issue with that position, saying that the statute "talks about three separate offenses but doesn't say that there was a time limit for the offenses that would apply."

---

[1]   (Tr., p. __) refers to the transcript of the April 1, 2015 hearing before the Undersigned. The transcript was filed in Case 15-cr-20241-JLK, which is the new case number for this criminal case after a grand jury indictment was returned. The transcript is at docket entry 17.

Counsel made additional arguments, and the AUSA noted that defense counsel would be correct **if** the issue is criminal history for advisory sentencing guidelines calculations -- which she noted is an issue different than whether the three offenses were qualifying offenses for the ACCA status. Defense counsel then agreed that the age of the conviction does not matter for an ACCA status. Thereafter, the defense switched back to a career offender analysis, rather than an ACCA designation. (Tr., p. 12).

The attorneys then discussed whether the current charge -- being a felon in possession of a firearm -- is a "crime of violence." The AUSA handling this case then consulted with another AUSA, and they both said they believed that possession of a firearm by a convicted felon is *not* a crime of violence. As it turns out, though, that point is irrelevant.

Once that off-the-cuff comment was made, the AUSA then concluded, "That being the case, Judge, **if** he's **not an ACC**, which I did do the calculation for, his guideline range would be **77 months to 96 months**" -- i.e., not a 15-year minimum mandatory with a possible life sentence. (Tr., p. 14) (emphasis supplied).

Operating under the assumption that Defendant is facing a far-more modest sentence (an assumption which was *incorrect,* as described below), the parties then began discussing bond conditions, though the United States maintained its position that detention was still appropriate.

Defendant's girlfriend, Jennifer Lang, testified and explained that she lives with her mother and her three children.  She was willing to be a co-signer on the bond and testified that Defendant Morales, if released, could live with her and her family. However, the Undersigned provided the AUSA with an opportunity to question Ms. Lang, and Ms. Lang revealed that she lives in Section 8 housing. She conceded that convicted felons (like Defendant Morales) cannot live in Section 8 housing. (Tr., p. 20).

Confronted with this Section 8 reality, defense counsel suggested that the Court issue a bond which would be effective only if Defendant located another place to live. The Undersigned rejected that request, saying, "[i]t's just too vague and too nebulous, and I'm concerned about your client's criminal history." (Tr., p. 21). The Undersigned then explained that a detention order would be entered, but I provided Defendant with the opportunity to revisit the issue.

The Undersigned specifically noted that Defendant "does in fact have a significant criminal history," but also stressed that "it appears that he will **not,** under the current proposed charges, **be facing a 15-year minimum mandatory sentence**[.]" (Tr., p. 22) (emphasis added).

The Undersigned advised defense counsel that he could "revisit the issue and file a motion to modify bond based on changed circumstances, and once you and your client and your client's family and neighbors and friends make those arrangements, you'll set it down for hearing, speak to the government first, see what their position is,

4

and I'll be happy to **entertain** the motion and we'll **have a hearing** and at that point we'll **see what we can do**." (Tr., p. 22). (emphasis added). A footnote in the written Order Granting Pretrial Detention [ECF No. 6] mirrored these comments: "As noted at the end of the hearing, Defendant can revisit the detention issue if he locates an appropriate residence to live in should he be released on bond."

Thus, it is clear that the Undersigned expressed a willingness to *consider* a motion to revisit the detention issue -- and that the Court's overall assessment was premised on the assumption, tendered by counsel for both sides, that there is no 15-year minimum mandatory sentence applicable to Defendant under the ACCA.

As demonstrated in my post-hearing review of the transcript, however, it is clear that the parties and the Court were mixing issues and were confused. For example, the discussion should have centered on whether the prior convictions qualified Morales as an armed career criminal under the **ACCA**, not whether they rendered him a career offender for Sentencing Guidelines purposes. Moreover, the parties, and therefore the Court, became distracted with the issue of whether a felon-in-possession charge is a crime of violence.

Approximately two weeks after the detention hearing, Morales filed his motion to revisit pretrial detention [ECF No. 10], based on the fact that his girlfriend had made arrangements to rent an apartment in a non-Section 8 building. The Court held a hearing on the motion on April 23, 2015. At that hearing, the United States abandoned

its prior, implicit concession that Morales would not be sentenced as an armed career criminal and renewed its contention that he faces a 15-year minimum mandatory sentence under the ACCA. Morales (through another attorney from the Federal Public Defender's Office) took the contrary position.

Defense counsel expressed surprise that the United States was urging the ACCA position again, saying he thought that issue had "already been resolved" at the initial detention hearing. The dispute at the April 23, 2015 hearing revolved around the methodology used to calculate the convictions for ACCA status. Morales' counsel argued that he had only two convictions because the third one would not be separately counted, while the United States contended that the two convictions at issue are separate and should not be counted as one conviction.

Given the diametrically opposed views on whether Morales' criminal history qualifies him as an armed career criminal facing a 15-year minimum mandatory, the Undersigned ordered the parties to submit memoranda. [ECF No. 15, Case 15-cr-20241].

The Order noted that "the significant difference between the two projected sentences . . . may well yield a different result for the motion to revisit bond."

The parties filed the memoranda [ECF Nos. 18; 19, Case 15-cr-20241] and it now seems clear that the parties, and therefore the Court, were under a misimpression about Morales' criminal history.  As it turns out, Morales has **five** qualifying convictions,

which make him susceptible to the ACCA minimum mandatory enhanced sentence, which requires only three separate qualifying predicate crimes.

**Calculating the Qualifying Convictions**

Applicable Legal Principles

The ACCA mandates a 15-year minimum prison term, and authorizes a maximum sentence of life imprisonment, *United States v. Brame*, 997 F.2d 1426, 1428 (11th Cir. 1993), **for any defendant convicted of 18 U.S.C. § 922(g)** (felon-in-possession),[2] who has three previous convictions for a violent felony, a serious drug offense, or both. 18 U.S.C. § 924(e)(1). In addition, the three prior convictions for a violent felony, serious drug offense, or both, must be committed on **separate** occasions. Specifically, the statutory provision applies for convictions "committed on occasions different from one another."

There is no age limit for ACCA predicate crimes. 18 U.S.C. § 924(e). Thus, a 30-year-old conviction may serve as an ACCA predicate conviction. Therefore, the discussion at the first hearing (about whether a 2004 arrest is too stale for a qualifying conviction) was irrelevant (and confusing).

---

[2]     Thus, defense counsel's impression that the *current* felon-in-possession charge would not be a "crime of violence" is incorrect and/or inapplicable. The ACCA's sentencing enhancement consequences do in fact apply here, assuming the requisite conviction history is present. The 15-year minimum mandatory sentence can apply in a case where, as here, the defendant is charged with being a felon in possession, in violation of 18 U.S.C. § 922(g)(1). *See* 18 U.S.C. § 924(e)(1).

The predicate crime must have occurred before the defendant committed the current section 922(g) crime. *United States v. Richardson*, 166 F.3d 1360, 1361 (11th Cir. 1999). This point was not in question.

Different provisions apply for determining if crimes were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), or "counted separately or as a single sentence," USSG § 4A1.2(a)(2). For guidelines-predicated crimes, the ordinary criminal history guidelines apply. But the issue before the Court is not tied to the advisory sentencing guidelines.

In its memorandum, the United States represented that there are no Supreme Court cases interpreting the ACCA's "committed on occasions different from one another" phrase. [ECF No. 19, p. 2]. The primary Eleventh Circuit cases interpreting that phrase are *United States v. Weeks*, 711 F.3d 1255 (11th Cir. 2013); *United States v. Proch*, 637 F.3d 1262 (11th Cir. 2011); *United States v. Sneed*, 600 F.3d 1326 (11th Cir. 2010); *United States v. Spears*, 443 F.3d 1358 (11th Cir. 2006); *United States v. Pope*, 132 F.3d 684 (11th Cir. 1998); and *United States v. Sweeting*, 933 F.2d 962 (11th Cir. 1991).

The Eleventh Circuit has interpreted the phrase to mean committed consecutively, not simultaneously. Two convictions will be deemed as two predicates regardless of whether they were charged in the same information/indictment or committed/sentenced on the same date. Thus, for example, simultaneously robbing six

people in a restaurant "stick up" counts as a single predicate, but robbing three stores in a mall "in immediate succession" counts as three predicates. *Pope*, 132 F.3d at 690–91.

The Eleventh Circuit has often treated multiple crimes as being "committed on occasions different from one another" for ACCA purposes, even when the crimes are close in time. *United States v. Jackson*, 57 F.3d 1012, 1017 (11th Cir. 1995) (rejecting argument that legal consequences which occurred on the same day meant there was only one conviction, and holding that five robberies over a two-month period which were **consolidated for sentencing purposes** justified ACCA enhancement); *United States v. Owens*, 15 F.3d 995, 98 (11th Cir. 1994) (three felonies on different dates warranted ACCA treatment even though they were **all resolved in one proceeding**); *United States v. Howard*, 918 F.2d 1529, 1537 (11th Cir. 1990) (affirming conviction and imposition of 15-year mandatory minimum sentence because three burglaries on separate days warranted ACCA treatment even though they were **charged in one indictment**); *United States v. Ginebra-Vera*, 522 F. App'x 827, 828–29 (11th Cir. July 2, 2013) (affirming conviction and sentence for robberies on separate days and rejecting argument that two offenses were actually one offense because the defendant **pled guilty to them on the same day**).

These cases, and others, demonstrate that Morales' argument (made at the initial detention hearing) is simply incorrect.[3] It is irrelevant for ACCA purposes whether the separate crimes were charged together or resolved together on the same day. *See also United States v. Allen*, 488 F. App'x 377, 379–80 (11th Cir. 2012) (affirming enhanced ACCA sentence because drug sales of same drug in same place three days apart qualify as separate predicate offenses **even though they were listed in the same indictment** and were **sentenced on the same day**); *United States v. Patterson*, 423 F. App'x 921, 924 (11th Cir. 2011) (affirming ACCA sentence based on sale of cocaine on successive days even though he was **sentenced for both drug offenses on the same day** and even though the sentences were to be served concurrently, rather than consecutively); *United States v. Fastnacht*, 261 F.App'x 197, 198 (11th Cir. 2008) (affirming ACCA sentence because five burglaries of five buildings **all in one night** still constituted five separate predicate crimes); *United States v. Jemison*, 292 F. App'x 863, 867 (11th Cir. 2008) (affirming ACCA sentencing enhancement because two cocaine sale transactions in a 24-hour period constituted separate crimes, not one crime).

Morales' post-hearing memorandum correctly cites applicable law, noting that "offenses which are committed at different times but which are consolidated for

---

[3]      At the initial detention hearing, as noted earlier in this Order, for example, defense counsel argued as follows: "As I'm sure your Honor is aware, that if someone is arrested on the same day for multiple offenses and the case is resolved on the same day, for **guideline** purposes in calculating the criminal history it counts as one offense." (Tr.,

conviction and sentencing are two separate crimes for purposes of the ACCA." [ECF No. 9]. In that memorandum, Morales does not expressly contend that his prior offenses are not separate crimes. Instead, he simply notes that he "potentially" qualifies for the ACCA enhancement "if" the United States establishes that he has three "serious drug offenses" or "violent felonies" which occurred on separate occasions. He then "questions" whether a case listed in the criminal history originated from an earlier case.

The United States has provided the following details about Morales' criminal history, and he has not submitted evidence of competent argument to challenge the history:

<u>Morales' Prior Convictions</u>

**a.    *Conviction #1***

The United States contends that Morales' first qualifying conviction occurred in case **F04-030777** (Possession of Cocaine and Cannabis/Sell/Manufacture/Delivery/Possess with Intent). In this case, a search of the defendant's residence revealed a marijuana hydroponics lab with three hundred and nine (309) live marijuana plants. The defendant was arrested on October 12, 2004. He was convicted and given probation on or about June 7, 2005. He violated probation and was then sentenced to ninety (90) days of incarceration.

---

p. 9) (emphasis supplied). The ACCA analysis is the one applicable here, not the criminal history tally for the Advisory Sentencing Guidelines.

Nevertheless, the Undersigned's review of the applicable Florida statutes suggests that these two convictions are **not** qualifying convictions under the ACCA -- because they are third-degree felonies, punishable by a term of imprisonment not exceeding five years. Fla. Stat. § 775.082(3)(e). But 18 U.S.C. § 924(e)(e)(1) applies to either "violent felony" or "serious drug offense" predicate crimes, and subsection (e)(2)(A)(ii) defines a "serious drug offense" to be a state law offense "for which a maximum term of imprisonment of **ten years or more** is prescribed by law." (emphasis added). Thus, the Undersigned <u>disagrees</u> with the United States' contention that this first conviction is a qualifying one for ACCA purposes.

b.     *Convictions #2-5*

The United States contends that Morales' next qualifying convictions were in case **F06-041785D** (4 Counts of Cocaine/Sell/Manufacture/Delivery/Possess with Intent). In this case, the defendant sold cocaine to an undercover police officer on four separate occasions. The defendant was initially arrested on December 19, 2006 and issued a $30,000 bond. While out on bond, the defendant violated the conditions of his release by picking up a new case, so his bond was revoked on June 18, 2007. The defendant was convicted on all four (4) counts and sentenced to twenty-seven months' imprisonment on November 19, 2008.

Because the defendant received four (4) convictions for the sale of cocaine on different occasions, **this case alone would make the defendant an armed career**

**criminal.** *United States v. Danford*, 503 F. App'x 900, 900–01 (11th Cir. 2013), *cert. denied*, 133 S.Ct. 2403 (2013). In *Danford*, the Eleventh Circuit held that the district court did not err by concluding that the defendant was subject to the § 924(e)(1) enhancement due to his prior felony convictions. "Although he was convicted and sentenced at the same time for each of his crimes, [the defendant's] prior convictions for the sale of cocaine arose out of separate and distinct criminal episodes, as they each involved the sale of cocaine on a different day." *Id. See also United States v. Sneed*, 600 F.3d 1326, 1329–30 (11th Cir. 2010) (the intervening days between each criminal episode constituted "temporal breaks," sufficient to separate them from each other).

### c.     Conviction #6

The last qualifying conviction, according to the Government's summary and exhibits, occurred in case **F07-020469** (Trafficking in Cocaine and Controlled Substance/Possession). In that case, law enforcement officers observed the defendant inhaling from a marijuana cigarette while driving. During a search incident to arrest, officers discovered two (2) plastic sandwich bags containing multiple baggies of cocaine in the vehicle. In addition, a search of the defendant's residence revealed multiple baggies of cocaine, marijuana and Xanax pills. The defendant was arrested on June 14, 2007. At the time of this arrest, the defendant was out on bond in his F06-041785D case. As a result of this arrest, his bond was revoked in case F06-041785D. The defendant was convicted and sentenced to twenty-seven months' imprisonment on November 19, 2008.

The defendant's sentence in this case (F07-020469) ran concurrent to his sentence in the F06-041785D case.

## Conclusion

Morales has arranged for non-Section 8 housing, but this change in circumstance is insufficient to justify the Undersigned to rescind the detention order after reconsideration. The housing issue was a prong of a multi-faceted set of circumstances, with all circumstances flowing from the fundamental assumption underlying the structural base -- that Morales is not subject to the ACCA enhancement and is not subject to the 15-year mandatory minimum. But he is.

As the Undersigned previously noted, the issue of whether Morales faces a 15-year minimum mandatory sentence is critical, and, now that we know he is confronted with that harsh reality, the change in housing does not overshadow the more-important consideration of his sentencing exposure.

A federal grand jury has now, after the detention hearing, indicted Morales, and the indictment specifically mentions § 924(e)(1).

Had counsel advised and convinced the Undersigned at the initial detention hearing that Morales is in fact facing a 15-year minimum mandatory sentence, the Court would not have offered to reconsider the detention if he could demonstrate an available residence.

The Undersigned therefore denies the motion, and the detention order remains in effect.

**DONE AND ORDERED** in Chambers, at Miami, Florida, April 30, 2015.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

cc.     Pretrial Services
        U.S. Marshals Service
        Anthony Natale, Assistant Federal Public Defender
        Miesha Shonta Darrough, AUSA